**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(NEWPORT NEWS DIVISION)**

**TOMMY LEWIS and JANET S. LEWIS**,   )
                                      )
            Plaintiffs,               )
                                      )     Case No.
    vs.                               )
                                      )
**AIR & LIQUID SYSTEMS**              )
**CORPORATION** (*sued individually and as*   )   **JURY TRIAL DEMANDED**
*successor-by-merger to* BUFFALO PUMPS,   )
INC.), a Pennsylvania Corporation with its   )
principal place of business in the State of   )
Pennsylvania;                         )
**A.W. CHESTERTON COMPANY**, a        )
Massachusetts Corporation with its principal   )
place of business in the State of Massachusetts;   )
**CUMMINS, INC.,** an Indiana Corporation   )
with its principal place of business in the State   )
of Indiana;                           )
**FMC CORPORATION** (*sued individually*   )
*and as successor-in-interest to* NORTHERN   )
PUMP COMPANY), a Delaware Corporation   )
with its principal place of business in the State   )
of Pennsylvania;                      )
**GENERAL ELECRIC COMPANY,** a New   )
York Corporation with its principal place of   )
business in the State of Massachusetts;   )
**HUNTINGTON INGALLS**                )
**INCORPORATED** *f/k/a* NORTHROP     )
GRUMAN SHIPBUILDING, INC. *f/k/a*     )
NEWPORT NEWS SHIPBULDING AND          )
DRY DOCK COMPANY, a Virginia          )
Corporation with its principal place of business   )
in the State of Virginia;             )
**IMO INDUSTRIES, INC.** *(sued individually*   )
*and as successor-in-interest* to DELAVAL   )
STEAM TURBINE COMPANY AND             )
DELAVAL, INC.), a Delaware Corporation   )
with its principal place of business in the State   )
of New Jersey;                        )
**JOHN CRANE, INC.** a Delaware Corporation   )
with its principal place of business in the State   )
of Illinois;                          )

**METROPOLITAN LIFE INSURANCE COMPANY,** a New York Corporation with its principal place of business in the State of New York;

**PARAMOUNT GLOBAL** *f/k/a* VIACOMCBS INC. *f/k/a* CBS CORPORATION *f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION, a Delaware Corporation with its principal place of business in the State of New York;

**QUAIL INDUSTRIES, INC.** *f/k/a* BEARD INDUSTRIES, INC. *f/k/a* RILEY-BEARD, INC., a Delaware Corporation with its principal place of business in the State of Texas;

**REDCO CORPORATION** *f/k/a* CRANE CO., a Delaware Corporation with its principal place of business in the State of Connecticut;

**SCHUTTE & KOERTING, INC.** a Delaware Corporation with its principal place of business in the State of Pennsylvania;

**TATE ANDALE, LLC** *f/k/a* TATE ANDALE, INC. *f/k/a* TATE TEMCO, INC. *f/k/a* TEMCO MACHINE WORKS, INC., a Maryland Corporation with its principal place of business in the State of Maryland;

**VELAN VALVE CORPORATION,** a Delaware Corporation with its principal place of business in the State of Vermont; and

**WARREN PUMPS LLC** (*sued individually and as successor-in-interest to* QUIMBY PUMP COMPANY, INC.), a Delaware Corporation with its principal place of business in the State of Massachusetts;

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## **COMPLAINT**

Plaintiffs **TOMMY LEWIS and JANET S. LEWIS** (hereinafter "Plaintiffs") allege as follows:

1.      At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of co-Defendants, and each of them, and at all said times each

Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-by-merger to* BUFFALO PUMPS, INC.), a Pennsylvania Corporation with its principal place of business in the State of Pennsylvania; **A.W. CHESTERTON COMPANY**, a Massachusetts Corporation with its principal place of business in the State of Massachusetts; **CUMMINS, INC.**, an Indiana Corporation with its principal place of business in the State of Indiana; **FMC CORPORATION** (*sued individually and as successor-in-interest to* NORTHERN PUMP COMPANY), a Delaware Corporation with its principal place of business in the State of Pennsylvania; **GENERAL ELECRIC COMPANY**, a New York Corporation with its principal place of business in the State of Massachusetts; **HUNTINGTON INGALLS INCORPORATED** (*f/k/a* NORTHROP GRUMAN SHIPBUILDING, INC. *f/k/a* NEWPORT NEWS SHIPBULDING AND DRY DOCK COMPANY, a Virginia Corporation with its principal place of business in the State of Virginia; **IMO INDUSTRIES, INC.** *(sued individually and as successor-in-interest* to DELAVAL STEAM TURBINE COMPANY AND DELAVAL, INC.), a Delaware Corporation with its principal place of business in the State of New Jersey; **JOHN CRANE, INC.** a Delaware Corporation with its principal place of business in the State of Illinois; **METROPOLITAN LIFE INSURANCE COMPANY**, a New York Corporation with its principal place of business in the State of New York; **PARAMOUNT GLOBAL** *f/k/a* VIACOMCBS INC. *f/k/a* CBS CORPORATION *f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION, a Delaware Corporation with its principal place of business in the State of New York; **QUAIL INDUSTRIES, INC.** *f/k/a* BEARD INDUSTRIES, INC. *f/k/a* RILEY-BEARD, INC., a Delaware Corporation with its principal place of business in the State of

Texas; **REDCO CORPORATIO** *f/k/a* CRANE CO. (*sued individually and as successor-in-interest to* CHAMPMAN VALVE CO. and *successor-in-interest to* COCHRANE CORP), a Delaware Corporation with its principal place of business in the State of Connecticut; **SCHUTTE & KOERTING, INC.** a Delaware Corporation with its principal place of business in the State of Pennsylvania; **TATE ANDALE, LLC** *f/k/a* TATE ANDALE, INC. *f/k/a* TATE TEMCO, INC. *f/k/a* TEMCO MACHINE WORKS, INC., a Maryland Corporation with its principal place of business in the State of Maryland; **VELAN VALVE CORPORATION,** a Delaware Corporation with its principal place of business in the State of Vermont; **WARREN PUMPS LLC** (*sued individually and as successor-in-interest to* QUIMBY PUMP COMPANY, INC.), a Delaware Corporation with its principal place of business in the State of Massachusetts; were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of Virginia, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of Virginia, or the laws of some other state or foreign jurisdiction, and that said Defendants have regularly conducted business in the State of Virginia.

2.      From January of 1961 through August of 1963, Mr. Lewis underwent nuclear power training in the United States Navy.  From April of 1963 through August of 1963, Mr. Lewis worked as a nuclear power plant operator at the Idaho National Laboratory, Naval Reactor Facility in Idaho Falls, ID. In September of 1963, Mr. Lewis was assigned to the USS James Madison (SSBN 627), which was undergoing construction by the Newport News Shipbuilding and Dry Dock Company in Newport News, Virginia.  Mr. Lewis' assignment to the USS James Madison continued through June of 1966.  Prior to the commissioning of the USS James Madison in July of 1964, Mr. Lewis worked on the construction of the uncommissioned hull.  During the time

period prior to its commissioning, USS James Madison was situated upon the premises of the Newport News Shipbuilding and Dry Dock Company (Defendant Huntington Ingalls Incorporated's predecessor-in-interest), and was under this Defendant's ownership, dominion, and control.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is a complete diversity of citizenship between the Plaintiffs and the Defendants named herein.  TOMMY LEWIS and JANET LEWIS are citizens and residents of Idaho Falls, Idaho.  Each of the Defendants' places of incorporation and principal places of business are set forth in Paragraph 1, *supra*.  No Defendant is incorporated under the laws of the State of Idaho, nor does any Defendant have its principal place of business in Idaho.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FIRST CAUSE OF ACTION
(Strict Liability)

PLAINTIFFS COMPLAIN OF DEFENDANTS, THEIR "ALTERNATE ENTITIES",
AND EACH OF THEM

5.      At all times herein mentioned, each of the named Defendants was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products

containing said substance. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said asbestos. The Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

6.      At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance.

7.      Defendants, their "alternate entities", and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without

knowledge of the hazards involved in such use.

8.      Said asbestos and asbestos-containing products were defective, unsafe, and unfit for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of the Defendants, their "alternate entities," and each of products were expected to and did reach the users and consumers without substantial change in the condition in which they were sold.  Said asbestos and asbestos-containing products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to users, consumers, workers, bystanders, and others, including the Plaintiff, TOMMY LEWIS, herein (hereinafter collectively called "exposed persons"), while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

9.      At all times mentioned herein, the above-referenced asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in this substance and products outweighed the benefits of said substance and products.

10.     At all times mentioned herein, the foreseeable use of said asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons," but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

11.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said Defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which

Plaintiff, TOMMY LEWIS, and others similarly situated were exposed.

12.     Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled resulting in the release of airborne asbestos fibers at the locations and times listed in Exhibit "A," and that through such foreseeable use and/or handling "exposed persons", including Plaintiff, TOMMY LEWIS, would be in proximity to and exposed to said asbestos fibers.

13.     Plaintiff, TOMMY LEWIS used, handled, or otherwise was exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable. Plaintiff, TOMMY LEWIS' exposure to asbestos and asbestos- containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

14.     As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff, TOMMY LEWIS' exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff, TOMMY LEWIS' diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

15.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

16.     Plaintiff, TOMMY LEWIS, suffers from malignant mesothelioma, caused by an

exposure to asbestos and asbestos-containing products and equipment. Plaintiff, TOMMY LEWIS, was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

17.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities", and each of them, Plaintiff, TOMMY LEWIS suffered permanent injuries to his person, including, but not limited to, mesothelioma, other lung damage, and cancer, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit.

18.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs have incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", Plaintiff, JANET S. LEWIS, has and will continue to be deprived of the support, society, solace, care, comfort, companionship, affection, advice, service and guidance of her husband TOMMY LEWIS.  Plaintiffs have and will also incur pecuniary losses, including loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses; the full nature and extent of which are not yet known.  Plaintiffs request leave to amend this complaint to conform to proof at the time of trial.

20.     In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities", and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said Defendants, their "alternate entities", and each of them, on or before 1930, and thereafter.

21.     On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities", and each of them, knew that members of the general public, and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

22.     With said knowledge, said Defendants, their "alternate entities", and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products,

Defendants, their "alternate entities", and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

23. The above-referenced conduct of said Defendants, their "alternate entities", and each of them, was motivated by the financial interest of said Defendants, their "alternate entities", and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, Defendants, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff, TOMMY LEWIS.

24. Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

25. Defendants, their "alternate entities", and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and

impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

26.     The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiffs, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

27.     Plaintiffs allege that the aforementioned Defendants, their "alternate entities", and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Plaintiff, TOMMY LEWIS.

28.     Plaintiffs further allege that Plaintiff, TOMMY LEWIS' injuries are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants, their "alternate entities", and each of them, all of which were a substantial contributing factor to Plaintiff's development of the asbestos disease complained of herein.

29.     Plaintiff, TOMMY LEWIS, relied upon Defendants, their "alternate entities", and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Plaintiff was injured permanently as alleged herein.

30.     As a direct and proximate result of the actions and conduct outlined herein,

Plaintiff, TOMMY LEWIS, suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
(Breach of Implied Warranty)

PLAINTIFFS COMPLAIN OF DEFENDANTS, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM

31.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First Cause of Action herein.

32.     Defendants impliedly warranted that their asbestos-containing products were reasonably fit for use and safe for their intended purposes.

33.     At the time of the manufacture and sale of their asbestos-containing products to Plaintiff and/or Plaintiff's employers, Defendants knew, should have known and/or had reason to know, that Plaintiff, TOMMY LEWIS, was a person whom Defendants might reasonably have expected to use, consume, or be affected by their asbestos-containing products.

34.     Throughout the years that Plaintiff was exposed to Defendants' asbestos-containing products, Defendants expected that their asbestos-containing products would reach, and they in fact did reach, the ultimate user or consumer without substantial change in the condition in which they were sold.

35.     Defendants' asbestos-containing products were sold in a defective condition in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and said Defendants failed to give adequate or sufficient warnings or instructions about the unreasonable risks and dangers inherent in their asbestos-containing products.

36.     Defendants breached said warranties to Plaintiff, TOMMY LEWIS, in that their

asbestos-containing products were imminently and inherently dangerous, defective, hazardous, unfit for use, not properly merchantable, and not safe for their intended, ordinary and foreseeable uses and/or purposes and such breaches proximately resulted in Plaintiff contracting malignant mesothelioma, which is permanent and/or fatal.

37.     Defendants' breaches of said warranties to Plaintiff, TOMMY LEWIS, were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of Plaintiff.

## THIRD CAUSE OF ACTION
(Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM

38.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the Second Cause of Action herein.

39.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, in that said substance proximately caused personal injuries to "exposed persons", while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons".

40.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

41.     Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff, TOMMY LEWIS  herein, would use or be in proximity of and exposed to said asbestos fibers.

42.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiff, TOMMY LEWIS, suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(False Representation Under Restatement of Torts Section 402-B)

PLAINTIFFS COMPLAIN OF DEFENDANTS, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM

43.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, and Third Causes of Action.

44.     At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re- branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff, TOMMY LEWIS, and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

45.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiff, TOMMY LEWIS, and his employers, relied upon said representations of Defendants, their "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

46.     Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff, TOMMY LEWIS, herein.

47.     As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiff, TOMMY LEWIS, sustained the injuries and

damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION
(Premises Owner/Contractor Liability)

PLAINTIFFS COMPLAIN OF DEFENDANTS **HUNTINGTON INGALLS INCORPORATED** AND **PARAMOUNT GLOBAL**, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (hereinafter "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:

48.     Plaintiffs, by this reference, incorporates the allegations contained in the First, Second, Third, and Fourth Causes of Action herein.

49.     At all times herein mentioned, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were successors, successors-in-business, assign, predecessors, predecessors-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing products and insulation. Said defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate

entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

50. At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled the following premises when Plaintiff, TOMMY LEWIS, was present. The following information provided is preliminary and is based on recall of events covering many years, and further investigation and discovery may produce additional information:

| PREMISES OWNER/OPERATOR DEFENDANT | LOCATION | TIME PERIOD |
|---|---|---|
| Paramount Global<br>*f/k/a* VIACOMCBS INC.<br>*f/k/a* CBS Corporation<br>*f/k/a* VIACOM, INC., successor by merger with CBS Corporation<br>*f/k/a* Westinghouse Electric Corporation | Idaho National Laboratory Naval Reactor Facility, Idaho Falls, ID | April, 1963 through August, 1963 |
| Huntington Ingalls Incorporated<br>*f/k/a* Northrop Grumman Shipbuilding, Inc.<br>*f/k/a* Newport News Shipbuilding and Dry Dock Company | Newport News Shipyard, Newport News, VA | September, 1963 through June, 1966 |

Additionally, Plaintiff, TOMMY LEWIS, might have been present at other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

51. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, and caused

the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff, TOMMY LEWIS , and other persons exposed to said asbestos while present at said premises.

52.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS respectively, caused asbestos-containing materials to be ripped out, cut/sawed out, chipped/hammered out, blown out, replaced, repaired, removed, disturbed, mixed, fabricated, installed, swept up, and dumped, on each of the aforesaid respective premises, including in the general areas of shipyard at large, by their own workers and/or by various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff, TOMMY LEWIS , and other persons exposed to said asbestos while present at said premises.

53.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, controlled, supervised and directed the work activities of their employees and contractors that caused the release of dangerous quantities of toxic asbestos fibers into the ambient air thereby creating a hazardous and unsafe condition to Plaintiff, TOMMY LEWIS, and other persons exposed to said asbestos while present at said premises.

54.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, controlled, owned, operated, maintained, supervised and managed the physical premises wherein the dangerous quantities of toxic asbestos fibers were released into the ambient air thereby creating a hazardous and unsafe condition to Plaintiff, TOMMY LEWIS, and other persons exposed to said asbestos while present at said premises.

55.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff, TOMMY LEWIS, and other workers or persons so exposed, present at each of the aforesaid respective premises.

56.     At all times relevant herein, Plaintiff, TOMMY LEWIS, entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation. In so doing, Plaintiff, TOMMY LEWIS, was exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, thereby causing TOMMY LEWIS to be exposed.

57.     Plaintiff, TOMMY LEWIS, at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials on said premises.

58.      At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS remained in control of the premises where Plaintiff, TOMMY LEWIS, was performing his work.

59.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS owed to Plaintiff, TOMMY LEWIS, and others similarly situated, a

duty to exercise ordinary care in the management of such premises and work occurring on such premises to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

60.     At all times mentioned herein, Plaintiff, TOMMY LEWIS, was an invitee of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and thus Defendants owed a duty to exercise ordinary care in the management of such premises and work occurring on such premises to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

61.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, knew or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions; and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

62.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate, remedy or correct, or to warn Plaintiff, TOMMY LEWIS, of, the existence of the aforesaid dangerous conditions and hazards on said premises.

63.     Prior to and at the times and places aforesaid, said PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos to be constructed, installed, maintained, used, replaced, repaired, and/or removed on each of their

aforesaid respective premises, by their own workers and/or by employing various contractors and/or subcontractors, and caused the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby injured Plaintiff, TOMMY LEWIS.

64.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS should have recognized that the work of said premises owner and/or premises owner's employees, workers, contractors and/or subcontractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

65.    In part, Plaintiff, TOMMY LEWIS, was exposed to dangerous quantities of asbestos fibers by reason of premises owner and/or premises owner's employees, workers, contractors and/or subcontractors' failure to take the necessary precautions.

66.    The work of premises owner and/or premises owner's employees, workers, contractors and/or subcontractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work place by reason of the release of dangerous quantities of asbestos.

67.    The unsafe premises and work place was created, in part, by the negligent conduct of the premises owner and/or premises owner's employees, workers, contractors and/or subcontractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS.  Said negligent conduct includes, but is not limited to:

> (a)    Failure to warn of asbestos dusts;
> (b)    Failure to suppress the asbestos-containing dusts;
> (c)    Failure to remove the asbestos-containing dusts through use of ventilation or appropriate means;
> (d)    Failure to provide adequate breathing protection, i.e., approved respirators or masks;
> (e)    Failure to inspect and/or test the air;
> (f)    Failure to provide medical monitoring;

(g)     Failure to select and hire careful and competent contractors or subcontractors;

(h)     Negligently and carelessly providing service contracts;

(i)     Negligently and carelessly providing designs, specifications and purchase requisitions calling for the installation and use of hazardous asbestos and asbestos containing products and equipment;

(j)     Negligently supplying asbestos-containing equipment and products for repairs of and construction on US Navy ships; and

(k)     Negligently supervising and training employees on the proper removal, replacement and installation of asbestos-containing materials.

68.     The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, as well as federal and state statutes, and regulations promulgated thereunder.   Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

69.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental regulations promulgated by the United States Government and the State of Virginia, including but not limited to the Safety and Health Standards for Federal Supply Contracts under the Walsh-Healey Public Contracts Act, which required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions.   Said Defendants' violations of said codes include, but are not limited to:

(a)     Failing to comply with statutes and allowing ambient levels

of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b)     Failing to segregate work involving the release of asbestos dusts;

(c)     Failing to suppress dust using prescribed ventilation techniques;

(d)     Failing to suppress dust using prescribed "wet down" techniques;

(e)     Failing to warn or educate plaintiff or others regarding asbestos substances on the premises;

(f)     Failing to provide approved respiratory protection devices;

(g)     Failing to ensure "approved" respiratory protection devices were used properly;

(h)     Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

(i)     Failing to provide adequate housekeeping and clean-up of the work place;

(j)     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

(k)     Failing to properly report renovation and disturbance of asbestos-containing materials;

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)     Failing to get approval for renovation as required by statutes;

(n)     Failing to maintain records as required by statute;

(o)     Failing to adequately train and supervise employees on the proper handling of asbestos;

(p)     Failing to remedy a hazardous/defective condition that Defendants knew or should have known existed; and

(q)     Negligently supplying asbestos containing equipment and materials for use on US Navy ship that were repaired and/or constructed on the premises.

70.     Plaintiff, TOMMY LEWIS, at all times was unaware of the hazardous condition or the risk of personal injury created by said defendants' violations of said regulations, ordinances, or statutes.

71.     At all times mentioned herein, Plaintiff, TOMMY LEWIS, was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

72.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

73.     As a legal consequence of the foregoing, Plaintiff, TOMMY LEWIS, developed an asbestos-related illness, which caused great injury, disability, and death as previously set forth, and Plaintiffs have suffered damages as alleged herein.

74.     The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", were and are willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(Allegations Against Metropolitan Life)

PLAINTIFFS COMPLAIN OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, ITS "ALTERNATE ENTITIES", AND EACH OF THEM

75.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First, Second, Third, Fourth, and Fifth Causes of Action herein.

76.     Defendant **METROPOLITAN LIFE INSURANCE COMPANY** (also referred

to as "Metropolitan Life") rendered substantial aid and assistance to the manufacturers of asbestos containing products to which Plaintiff, TOMMY LEWIS, was exposed, and such assistance by Metropolitan Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos containing products by such manufacturers which proximately caused Plaintiff's illness and disability.

77. Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to the Plaintiff, TOMMY LEWIS, by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duty:

(1)    to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

(2)    to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, **METROPOLITAN LIFE** knew or should have known that it was providing testing services for the ultimate protection of third persons, including thePlaintiff, TOMMY LEWIS.

78. In both conducting said tests and in publishing their alleged results, **METROPOLITAN LIFE** failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  **METROPOLITAN LIFE** also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

79. Plaintiff, TOMMY LEWIS, unwittingly but justifiably relied upon the thoroughness of **METROPOLITAN LIFE's** tests and information dissemination, the results of

which Metropolitan Life published in leading medical journals.

80.     As a direct and proximate contributing result of **METROPOLITAN LIFE's**
failures to conduct or accurately publish adequate tests or disseminate accurate and truthful
information, after undertaking to do so; (i) the risk of harm to the Plaintiff, TOMMY LEWIS, from
asbestos exposure was increased, and (ii) the Plaintiff suffered the injuries described below.

81.     In failing to test fully and adequately for the adverse health effects from exposure
to asbestos; in delaying the publication of such results; and in falsely editing such results as were
obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote
the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-
producing Defendants materially to understate the hazards of asbestos exposure, all for its own
profit and gain, **METROPOLITAN LIFE** acted recklessly, wantonly, and in calculated disregard
for the welfare of the general public, including the Plaintiff, TOMMY LEWIS.

### SEVENTH CAUSE OF ACTION
(Loss of Consortium)

PLAINTIFF **JANET S. LEWIS** COMPLAINS OF DEFENDANTS, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM

82.     Plaintiff JANET S. LEWIS incorporates by reference, each and every paragraph of
the First through Sixth Causes of Action herein.

83.     Plaintiffs TOMMY LEWIS and JANET S. LEWIS were married on August 19,
1963, and at all times relevant to this action were, and are now, husband and wife.

84.     Prior to Plaintiff TOMMY LEWIS' injuries as alleged, he was able and did perform
duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, Plaintiff TOMMY
LEWIS, has been unable to perform the necessary duties as a spouse and the work and services
usually performed in the care, maintenance, and management of the family home, and he will be

unable to perform such work, service and duties in the future.  As a proximate result thereof, JANET S. LEWIS has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

85.     Plaintiff JANET S. LEWIS' discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

86.     As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to Plaintiff TOMMY LEWIS, as set forth in this complaint, Plaintiff JANET S. LEWIS has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

### EIGHTH CAUSE OF ACTION
(Gross Negligence Against Shipyard)

PLAINTIFFS COMPLAIN OF DEFENDANT HUNTINGTON INGALLS, INC.,
ITS "ALTERNATE ENTITIES", AND EACH OF THEM

87.     All allegations above are incorporated herein.

88.     At all relevant times, workers at the Newport News Shipbuilding and Dry Dock Company (the "Shipyard") used, installed, replaced, repaired, and/or removed asbestos-containing products aboard the ships repaired, overhauled, or built in the normal course and scope of the Shipyard's business operation, including but not necessarily limited to the USS James Madison. The Shipyard knew, had reason to know, and/or should have known that, without proper precautions, a foreseeable consequence of the use, installation, replacement, repair, and/or removal of asbestos containing materials in or on these ships was that persons in the vicinity of such

activities would be exposed to dangerous levels of airborne asbestos fibers.  Despite the Shipyard's knowledge of the dangers posed by the inhalation of asbestos dust, the Shipyard chose to do nothing to prevent invitees on its premises, such as Plaintiff, TOMMY LEWIS, from being exposed to dangerous levels of airborne asbestos fibers.

89.     At all times relevant to this action, the Shipyard had a "Safety Department" purposed with educating its employees about safe work practices.  The Shipyard held monthly meetings among supervisors and superintendents to educate them about safety practices and procedures.  A committee of superintendents functioned as a safety policy committee, for which the Safety Department Supervisor was the secretary.

90.     At all times relevant to this action the Safety Department Supervisor regularly reviewed publications containing information about occupational and/or industrial safety, including but not limited to publications of the United States Bureau of Mines, monthly journals or digests published by the American Medical Association pertaining to industrial medicine, and other trade publications pertaining to occupational/industrial safety.

91.     At all times relevant to this action, the Safety Department Supervisor also routinely exchanged information pertaining to occupational/industrial safety practices with other shipyards, including the Norfolk Navy Shipyard, Bath Iron Works, Bethlehem Shipbuilding, Sun Shipbuilding, Maryland Drydock Co., and the New York Shipbuilding Corp.  The group of shipyards participating in that exchange of information was called the, "Seven Shipyards Safety Exchange."  The Seven Shipyards Safety Exchange circulated letters on the subject of occupational safety practices and met multiple times per year to discuss safety topics.

92.     Through these activities, i.e. reviewing the pertinent literature about occupational/industrial safety, and by communicating with other shipyards on that subject of

occupational/industrial safety, the Shipyard knew or had reason to know that exposure to asbestos fibers posed a serious health hazard to invitees upon its premises, including Plaintiff, TOMMY LEWIS.

93.     The Shipyard created hazardous and deadly conditions that caused Plaintiff, TOMMY LEWIS to be exposed to a significant amount of asbestos fibers. Plaintiff, TOMMY LEWIS' injuries and disease were the caused by acts of omission, negligence, and gross negligence by the Shipyard. Specifically, the Shipyard:

(a)     Chose not to take reasonable precautions or to exercise reasonable care to adequately or sufficiently warn persons such as Plaintiff, TOMMY LEWIS that exposure to asbestos may be hazardous and injurious to their health;

(b)     Chose not to educate persons such as Plaintiff, TOMMY LEWIS about reasonably safe and sufficient safeguards, proper safety equipment and appliances needed to prevent harmful and injurious exposure to asbestos;

(c)     Chose not to take reasonable, sufficient, and/or proper precautions reasonably calculated to instruct persons such as Plaintiff, TOMMY LEWIS about the proper and safe use and handling of products containing asbestos and/or equipment incorporating asbestos products; and

(d)     Chose not to follow or adhere to various state and U.S. Government statutes, regulations, and guidelines — such as the Walsh-Healy Act — designed to prevent persons such as Plaintiff, TOMMY LEWIS from being exposed to asbestos.

94.     The Shipyard's foregoing acts, failures, and/or omissions were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety,

and rights of Plaintiff, TOMMY LEWIS.


## NINTH CAUSE OF ACTION
(Gross Negligence Against All Defendants)

PLAINTIFFS COMPLAIN OF DEFENDANTS, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM

95.    All allegations above are incorporated herein.

96.    The acts and omissions of the Defendants, their "Alternate Entities," and each of them, shows deliberate indifference and an utter disregard or prudence that amounts to a complete neglect of the safety of others.  Their conduct was reckless, willful, and wanton because the Defendants knew that their acts and omissions created an unreasonable risk of harm, and there was a high degree of probability that such harm would result.

97.    For many decades prior to TOMMY LEWIS' exposures to asbestos, each of the Defendants has been in possession of medical and scientific data, literature, and test reports that clearly indicated that the inhalation of asbestos dust and fibers was unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

98.    Despite the medical and scientific data, literature, and test reports possessed by and available to the Defendants, they fraudulently, willfully, and maliciously:

(a)    withheld, concealed, and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff TOMMY LEWIS, who was working with or around Defendants' asbestos-containing products, and/or was exposed to asbestos dust and fibers generated by Defendants' use of and/or manufacture of asbestos-containing products;

(b)    caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases, which the Defendants knew to be incorrect, incomplete, outdated, and  misleading; and/or

(c)    distorted the results of medical examinations conducted upon persons similarly situated to Plaintiff who were exposed to asbestos by falsely stating and/or concealing the nature and extent of the harm to which Plaintiff and persons similarly situated to Plaintiff have suffered.

99.    As the direct and proximate result of the false and fraudulent representations, omissions, and concealments set forth above, the Defendants, individually and jointly, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure asbestos-containing products that were used and/or manufactured by Defendants, and which caused the release of respirable asbestos fibers.

100.    Plaintiffs respectfully request that the Defendants be cited to appear and answer herein as the law commands. Furthermore, upon final hearing hereof, Plaintiffs request judgment from the Defendants jointly and severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for general, compensatory and special damages; plus a sum well in excess of Seventy-Five Thousand Dollars ($75,000.00) for punitive damages; for medical expenses in an amount to be shown upon the trial hereof; together with costs and disbursements herein, and interest on said judgment from the date of filing until paid as by law provided, for costs of this action and such other and further relief as to which they may be entitled.

101.    The Defendants' conduct described above was a direct, proximate and producing

cause of the damages resulting from asbestos-related lung disease of Plaintiff, TOMMY LEWIS, and of the following general and special damages including:

      (a)    For the past, present, and future pain and suffering, mental and emotional anguish, and anxiety sustained by Plaintiffs;

      (b)    The physical impairment suffered by Plaintiff;

      (c)    The disfigurement suffered by Plaintiff;

      (d)    Reasonable and necessary past, present, and future medical and related expenses according to proof incurred by Plaintiff;

      (e)    Plaintiff's lost earnings and net accumulations;

      (f)    Plaintiff's mental anguish caused by the anticipation of pain, death, and forever leaving his beloved family;

      (g)    Past and future loss of the companionship and society, care, advice, counsel and consortium which Plaintiffs would have received from the Plaintiff prior to his illness caused by his exposure to asbestos;

      (h)    The past and future mental anguish suffered by Plaintiff's heirs as a consequence of observing the last illness of the Plaintiff;

      (i)    Plaintiffs seek punitive and exemplary damages;

      (j)    For Plaintiffs' general damages according to proof;

      (k)    For damages for fraud according to proof;

      (l)    For Plaintiffs' cost of suit herein;

      (m)    For pre- and post-judgment interest; and

      (n)    For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: July 8, 2022       Respectfully submitted,


            By: ___/s/ Erin E. Jewell_____
            Erin E. Jewell, Esq. (VSB No. 71082)
            William W.C. Harty, Esq. (VSB No. 45447)
            **HARTY JEWELL, PLLC**
            P.O. Box 275
            Seaford, VA 23696
            757-568-9633 Telephone
            757-703-0357 Facsimile
            Will@HartyJewell.com
            Erin@HartyJewell.com

            Peter A. Kraus, Esq. (VSB No. 25547)
            **WATERS & KRAUS, LLP**
            3141 Hood Street, Suite 700
             Dallas, TX 75219
            214-357-6244 Telephone
            214-357-7252 Facsimile
            kraus@waterskraus.com

            **ATTORNEYS FOR PLAINTIFFS**